Dear Mr. Harris:
The Attorney General has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 The Oklahoma Legislature has created a juvenile bureau in each county having a population of eighty thousand (80,000) or more. For purposes of employment liability, are these juvenile bureaus and their employees State or county employees?
You ask whether juvenile bureaus and their employees are State or county employees for purposes of employment liability. You indicate this encompasses factors such as whether administrative remedies should be exhausted, the source of revenue used to satisfy potential judgments and who is to provide legal representation to the juvenile bureaus. Because the subject of "employment liability" is broad and specific tests have been articulated for determining liability under certain circumstances, we cannot provide an answer which will govern every possible scenario that may arise in determining employment liability. The existence of an employment relationship does not necessarily answer the specific questions you pose. See Anglin v. City of Aspen, Colo.,552 F. Supp. 2d 1205, 1216-17 (D. Colo. 2008) (holding that the county was jointly liable with the county sheriff in civil rights action for the misdeeds of sheriffs and their employees when the sheriff set official policy for the county, even though the county and the two sheriffs were separate entities and employees were not county employees).
We can state, however, that under general principles juvenile bureaus are part of county government, and juvenile bureaus and their employees are considered to be employees of the county. We reach this conclusion based upon our review of the fundamental nature of juvenile bureaus, including their history as a part of county government, their service to the citizens of certain individual counties rather than to the State as a whole, the payment by the county of all expenses to operate them and the supervision, appointment and removal of the director by a juvenile judge who is performing this administrative function on behalf of the county.
 I. *Page 2 THE HISTORY OF JUVENILE BUREAUS IN OKLAHOMA SHOWS JUVENILE BUREAUS ARE PERFORMING A COUNTY FUNCTION.
Our determination that juvenile bureaus and their employees are generally considered to be county employees is based in part on our examination of the history of the juvenile justice system in Oklahoma.
In 1947, the Oklahoma Legislature enacted a new series of statutes creating the office of "County Juvenile Officers" in certain counties.See 10 O.S.Supp. 1947, §§ 126.1-126.9[10-126.1-126.9]. County juvenile officers were created in every county "having a population of not less than two hundred thousand (200,000)" and were "under the direction and supervision of the Judge of the County Court." Id. § 126.1. The judge had the "power to appoint six (6) Assistant Juvenile Officers, one (1) clerk, and one assistant clerk, and, when necessity arises, to appoint such additional Assistant Juvenile Officers and clerical assistants . . . to properly conduct the juvenile work in said county." Id. This appointment was "with the consent of the Board of County Commissioners."Id.
The Legislature established the duties of the "Juvenile Officer or Assistant Juvenile Officers, under the direction of the County Judge of the county, to investigate and report on all cases of dependent and neglected or delinquent children residing or being in the county . . . to file information or complaint and to institute and commence the necessary legal proceedings for the purpose of carrying into effect the laws of this State relating to dependent and neglected, and delinquent children and . . . [to] investigate and report to the County Judge for appropriate legal action the existence and maintenance of any place or public resort or institution in the county which is or may be detrimental to the morals and welfare of any delinquent or dependent and neglected child or children." Id. § 126.3. The statute established the duties of the "clerical assistant or assistants to perform the clerical and secretarial work necessary to the county juvenile office." Id. The statute also gave county juvenile officers the right to make arrests in certain circumstances. Id.
The county judge was responsible for setting the salary of the Chief Juvenile Officer, the assistants and the clerical assistants within a range specified by statute. Id. § 126.4. The Board of County Commissioners was charged with setting up the annual budget and the payment of salaries. Id. § 126.5. All expenses were to be reported to the county judge, who approved the expenses for payment by the Board of County Commissioners. Id. § 126.6.
In 1951, the Legislature added provisions creating the position of County Juvenile Officer "[i]n every county in this State having a population of not less than forty-five thousand (45,000) persons as shown by the last Federal Census or any future regular Federal Census, having a city located therein with a population of not less than twenty-five thousand (25,000) persons as shown by the last Federal Census or any future regular Federal Census." 10 O.S. 1951, § 127.1[10-127.1]. These 1951 statutes, applicable to the smaller counties, were virtually the same as the 1947 statutes with regard to duties, payment of salaries and expenses. *Page 3 
In 1967, the Oklahoma voters adopted constitutional amendments regarding the judicial department. See OKLA. CONST. art. VII, §§ 4
through 16. Those amendments established district courts, abolished existing courts and transferred powers and duties to the respective district courts. Id. § 1. Section 8(c) of Article VII specifically provided that juvenile court judges would become associate district judges. All salaries and expenses of judges of the district courts were to be paid by the State, with "such additional salaries as may be provided by statute to be paid by the respective districts or counties."Id. § 11(a).
In 1968, shortly after this reorganization, additional statutes were enacted to govern all aspects of the juvenile justice system. See 10 O.S.Supp. 1968, §§ 1101-1504[10-1101-1504]. These 1968 amendments repealed the 1947 and 1951 statutes pertaining to the office of County Juvenile Officer. Id. § 1502. In these 1968 amendments, the term "juvenile bureau" was used for the first time. Id. §§ 1201-1210.[1] The statutes were recodified to 10 O.S.Supp. 1995, §§ 7305-1.1-7305-1.10, in 1995. See 1995 Okla. Sess. Laws ch. 352, § 199. The current version of Section 7305-1.1 of Title 10, as amended by 2008 Okla. Sess. Laws ch. § 385, § 1, reads:
 A. In each county having a population of eighty thousand (80,000) or more, as shown by the last preceding Federal Decennial Census, there is created a juvenile bureau and a citizens' advisory committee. For legal representation purposes only, the juvenile bureau and all facilities operated by the juvenile bureau are designated as a department of the county.
 B. In each county having a duly constituted juvenile bureau as of January 1, 2005, as provided for in subsection A of this section, the juvenile bureau shall remain in place and continue in operation. No other *Page 4 
counties shall establish juvenile bureaus.
 C. The Department of Juvenile Justice shall provide intake, probation and parole services in all counties not having juvenile bureaus as provided for in Section 7302-2.3 of this title.
 Id. The current statute reads essentially as it did when it was first adopted, despite having been amended several times since 1968. Among those amendments, subsection B was added in 1981. 1981 Okla. Sess. Laws ch. 176, § 1(B). In 1995, the term "Juvenile Justice" was substituted for "Human Services" in what was then subsection B, and Section "7302-2.3" was substituted for "602." 1995 Okla. Sess. Laws ch. 352, § 153(B). In 2004, "eighty thousand (80,000)" was substituted for "one hundred thousand (100,000)" and the date "January 1, 2005" was substituted for "January 1, 1981." See 2004 Okla. Sess. Laws ch. 305, § 1(A), (B). The second sentence of subsection B was recodified as subsection C. Id. The last sentence was added to subsection A in 2008. See 2008 Okla. Sess. Laws ch. 385, § 1(A).
The current juvenile bureaus perform the same functions as the original office of County Juvenile Officer created in 1947. The director and other employees of the juvenile bureau "investigate and report on all cases that are pending in the Juvenile Docket of the district court, and . . . investigate and report on all cases of delinquent children and children in need of supervision, residing or being in the county." 10 O.S. 2001, § 7305-1.4[10-7305-1.4](A). The director and counselors "shall have the power to file, or cause to be filed, information or complaint and to institute and commence the necessary legal proceedings for the purpose of carrying into effect the laws of this state relating to delinquent children," and "shall investigate and report to the court for appropriate legal action the existence and maintenance of any place or public resort or institution in the county which is or may be detrimental to morals and welfare of children." Id. The director or assistants to the director have arrest powers in certain circumstances. Id. § 7305-1.5(A). The bureaus are funded in the same manner as their predecessors. Id. § 7305-1.7.
As shown by this history, the current juvenile bureaus created to serve counties with populations of eighty thousand (80,000) or more are the descendants of the original office of County Juvenile Officer. As did their predecessors, the current juvenile bureaus serve the needs of children residing or being in the individual counties. Although the reorganization of the judiciary in 1968 changed the county juvenile judge to an associate district judge, the function of what is now the juvenile bureau did not change. The juvenile judge and the juvenile bureaus continue to perform juvenile justice services for those counties meeting the statutory population requirements. The bureaus are not responsible for serving the entire state but exist to perform services only for those counties which meet the population qualifications set forth in the Oklahoma statutes.
 II. STATUTORY CHARACTERISTICS OF JUVENILE BUREAUS SHOW THE BUREAUS ARE A PART OF THE COUNTY. *Page 5 
We also base our decision that juvenile bureaus and their employees are employees of the county on the statutory characteristics of juvenile bureaus. The current statute lists juvenile bureaus at 10 O.S. 2001, § 7302-9.2[10-7302-9.2](1) as one of the agencies comprising the juvenile justice system. These agencies are responsible for the care, custody or supervision of youth alleged or adjudicated to be delinquent. "Agencies and programs comprising the juvenile justice system" are defined to mean:
 a. the courts, the District Attorney's Council and offices of the district attorneys, state and local law enforcement agencies, juvenile bureaus, the Department of Human Services, the Department of Juvenile Justice of the Office of Juvenile Affairs, the Oklahoma Commission on Children and Youth, the Department of Corrections, the Criminal Justice Resource Center, any other state agency responsible for the care, custody or supervision of youth alleged or adjudicated to be delinquent[.]
Id. (emphasis added). The use of the phrase "any other state agency" to describe the listed entities would seem to indicate that each of the entities listed in the statute are state agencies. Doubt is cast on this conclusion, however, by the inclusion of "local law enforcement agencies" in the list. Obviously, local law enforcement agencies are not state agencies. Furthermore, other provisions refer to employees of the juvenile bureaus as "other county officers." 2008 Okla. Sess. Laws, ch. 385, § 2(C), (D)(3) (amending 10 O.S.Supp. 2007, § 7305-1.7[ 10-7305-1.7](C), (D)(3)). Thus, we cannot conclude that the inclusion of juvenile bureaus in this list demonstrates they are a state agency or their employees are state employees. We must review the statutes governing juvenile bureaus to determine the relationship between juvenile bureaus, juvenile judges and counties.
Juvenile bureaus were created in counties with populations of eighty thousand (80,000) or more to serve the needs of those specific counties. 2008 Okla. Sess. Laws, ch. § 385, § 1 (amending 10 O.S. Supp. 2007, § 7305-1.1[10-7305-1.1]). The county is responsible for the payment of all expenses of the bureau and its employees. The budget of the juvenile bureau is discussed at Section 7305-1.7(D) of Title 10, which states:
 D. In all counties having a juvenile bureau, the budget of the juvenile bureau for salaries and expenses of the directors, counselors and other employees shall be established and funded as follows:
 1. All expenses incurred in complying with the provisions of this article shall be a county charge;
 2. The salaries and other compensation of all employees of the juvenile bureau shall be fixed by the judge within the limit of the total appropriations therefor; and *Page 6 
 3. It is made the duty of the county excise board to make the necessary appropriation and levy for the payment of salaries of the director and all other employees, together with the expenses of administering the bureau, consistent with the duty to do likewise with the budget estimates of other county officers under the board's jurisdiction, as required by the Constitution and laws of this state.
Id. (emphasis added). Subsection E of this Section requires that "expenses incurred by the director and counselor in carrying out the orders of the judge of the court shall be reported to the judge of the Juvenile Division," and that expenses be paid by the board of county commissioners after such judge approves them by order after hearing testimony.
Section 7305-1.7 sets parameters on the salaries of the director and other employees of the bureau and governs payment of expenses. Id.
§ 7305-1.7(A), (B). That section also sets the ranges for the salary for supervisors with intake and intake-probational duties and employees with case, probation, counseling or juvenile duties. Id. § 7305-1.7(A)(2), (3). The judge, subject to the general administrative authority of the county commissioners, fixes the salaries. Id. § 7305-1.7(A). Subsection 7305-1.7(B) also provides:
 B. The judge of the Juvenile Division, subject to the general administrative authority of the county commissioners of the contracting county, may fix a limit on the amount of expenses that may be incurred by the director and assistants to the director, such limit to be in the judgment of the judge adequate to care for the expenses necessary to carrying out the orders of the court in an efficient and expedient manner. The director and assistants to the director and other personnel of the court shall keep and maintain their offices at the place where the office of the judge of the court is kept, unless the judge of the Juvenile Division, subject to the general administrative authority of the county commissioners of the contracting county, shall direct otherwise. The offices of the director and assistants to the director shall contain adequate equipment, desk space and consultation rooms necessary for appropriate office procedure.
Id. (emphasis added). Subsection C of Section 7305-1.7 pertains to reimbursement and reads:
 C. In addition to their salaries, the director and assistants to the director shall be reimbursed at the same rate as state employees for mileage traveled by them in the investigation of court cases and in supervising probationers; with the approval of the judge in charge of the Juvenile Division, the director and assistants may also receive reimbursement, at the rate and in the manner applicable to other county officers, for actual and necessary expenses incurred by them in attending conferences, meetings, seminars or official business of the court either within or outside of the State of Oklahoma. *Page 7 
Id. (emphasis added). Thus, the judge of the juvenile division has responsibility for fixing salaries and approving expenses and that approval is subject to the general administrative authority of the county commissioners.
The role of the juvenile judge with regard to county juvenile bureaus is primarily an administrative one. At 10 O.S.Supp. 2007, § 7305-1.2[ 10-7305-1.2], the Legislature specifically provided that the director of a juvenile bureau is appointed by and subject to removal by the judge of the Juvenile Division. The director is also subject to the direction and supervision of the juvenile judge. Title 10 O.S. Supp. 2007, § 7305-1.2[ 10-7305-1.2] states:
 The chief administrative officer of the juvenile bureau shall be a director, who shall be subject to the direction and supervision of the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District within budgetary limitations. There shall be sufficient counselors, clerks and assistant clerks to properly conduct the work of the bureau. The director shall be a person over the age of thirty (30) years, of good character, qualified in social work, and familiar with the problems of juvenile delinquency and dependency. The director shall be appointed by the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District, from a list of eligible persons established by the citizens' advisory committee at the request of the Presiding Judge of the Judicial Administrative District. Counselors and other persons may be employed by the director with the approval of the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District. The director may be removed by the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District at any time. The counselors and other employees may be removed by the director.
Id. (emphasis added). This statute was amended by 2007 Okla. Sess. Laws ch. 176, § 2, to add the last sentence providing that counselors and other employees may be removed by the director. Prior to the amendment, the director, counselors and other employees could be removed at any time by the judge of the Juvenile Division, subject to the general administrative authority of the Presiding Judge of the Judicial Administrative District. The amendment also deleted the words "and counselor" from the statute which had provided that the director and counselors were to be appointed by the judge of the Juvenile Division. Thus, as of 2007, the power of the juvenile judge is diminished with regard to counselors and other employees of the juvenile bureau as they are treated differently than the director for purposes of appointment and removal. They may be removed by the director, who in turn may be removed by the judge of the Juvenile Division.
Section 7305-1.3 assigns specific duties to the director of a juvenile bureau, stating, "The director, under the general supervision of thejudge, shall organize, direct and develop the administrative *Page 8 
work of the court, including the social, financial and clerical work, and the director shall perform such other duties as to children as any judge of the court shall direct." Id. § 7305-1.3(A) (emphasis added). That statute also states, "The technical and professional employees shall have charge of cases assigned to them for investigation or treatment and shallperform such other duties as may be assigned to them by the director."Id. (emphasis added). Thus, the director is under the general supervision of the judge and technical and professional employees are assigned duties by the director.
For purposes of investigating and reporting on their pending cases, employees of the juvenile bureau serve at the request of and under the direction of the juvenile court. Section 7305-1.4 provides:
 A. It shall be the duty of the director and other employees of the juvenile bureau, at the request of and under the direction of the court, to investigate and report on all cases that are pending in the Juvenile Docket of the district court, and to investigate and report on all cases of delinquent children and children in need of supervision, residing or being in the county. The director and counselors shall have the power to file, or cause to be filed, information or complaint and to institute and commence the necessary legal proceedings for the purpose of carrying into effect the laws of this state relating to delinquent children and children in need of supervision, and the director and counselors shall investigate and report to the court for appropriate legal action the existence and maintenance of any place or public resort or institution in the county which is or may be detrimental to morals and welfare of children. It shall be the duty of the court clerk to assign adequate personnel to perform the clerical duties necessary and incidental to the operation of the Juvenile Docket of the court.
Id. (emphasis added). Thus, the juvenile judge directs the investigations of the juvenile bureaus and their employees. The court clerk assigns clerical personnel to assist in the operation of the juvenile docket of the court.
To summarize, the county is statutorily responsible for payment of all expenses, including salaries, expenses of administering the bureau and expenses incurred in carrying out the orders of the judge. The juvenile judge is responsible for appointment, direction, supervision and removal of the director of the bureau. Other employees are subject to removal by the director. The juvenile judge fixes the salaries of the director and other employees and fixes a limit on the expenses to be incurred. The judge issues orders for payment of expenses after hearing testimony. These expenses are subject to the general administrative authority of the county commissioners.
These factors lead us to conclude that, for general purposes, juvenile bureaus and their employees are employees of the county. We reach this conclusion for several reasons. First, juvenile bureaus are created for the specific purpose of serving only those counties with populations of eighty thousand (80,000) or more. 10 O.S.Supp. 2007, § 7305-1.1[10-7305-1.1](A). In establishing the juvenile bureaus, *Page 9 
the Legislature provided for a specific situation peculiar to individual counties with certain populations. The statutes require the creation of a citizens' advisory committee to assist the juvenile bureau. 10 O.S. 2001, § 7305-1.9[10-7305-1.9](A). That committee consists of seven members, appointed by the judge of the Juvenile Division assigned to try juvenile cases, to serve for four (4) years. Id. Subsection B of Section 7305-1.9 provides:
 B. The membership of such committee shall contain an official or employee of the public schools of the county, a professional social worker employed by any recognized social agency in the county, a member of the board of county commissioners of the county, an attorney licensed to practice in the State of Oklahoma to be selected by the members of the County Bar Association of the county, and three other members selected at will by the judge of the Juvenile Division; and of the seven members, three shall be women, and all members shall, at the date of their appointment, be legal residents of the county.
Id. (emphasis added). These statutes show the focus of the juvenile bureau is on providing services to the individual counties, not the State. To promote county involvement, the Legislature saw fit to include county residents in the process. Further, the statutes establishing juvenile bureaus specifically provide the juvenile judges are subject to the general administrative authority of the county commissioners in fixing salaries and expenses. 2008 Okla. Sess. Laws ch. 385, § 2(B) (amending10 O.S.Supp. 2007, § 7305-1.7(B)).
Secondly, all expenses of the juvenile bureau are to be paid by the county. Id. § 2(D)(1) (amending § 7305-1.7(D)(1)). This is significant in determining who is responsible for the payment of judgments against the juvenile bureau. Courts that have considered the issue of who is responsible for payment of judgments against juvenile bureaus have looked to the source of funds. For instance, in Robinson v. Sappington,351 F.3d 317, 338-39 (7th Cir. 2003), the Seventh Circuit Court of Appeals considered whether Macon County, Illinois, was a necessary party to an action to a charge of hostile work environment sexual harassment and constructive discharge. The court found that under Illinois law, Macon County was responsible for the payment of expenses and judgments emanating from the workings of the circuit court. The court specifically found that the fact that some of the parties involved were state officials did not alter that fiscal responsibility. Id.
Similarly, in Mears v. Lake County Council, 709 N.E.2d 747, 749
(Ind.Ct.App. 1999), the Court of Appeals of Indiana rejected a claim that, because the juvenile judge had exclusive control of the employees of the juvenile bureau, the State should be held liable under the doctrine ofrespondeat superior for the costs of defending the judge and for the payment of any judgment against her. The court found that the plain language of the Indiana statute requiring the county to pay all expenses required the county to pay legal costs incurred in defending employees and the judgement entered against the employees. Id. *Page 10 
Here, the county is statutorily responsible for all expenses of the juvenile bureau. There is no reason to conclude that payment for expenses of litigation would come from a different source.
Finally, the suggestion that juvenile bureaus and their employees are employees of the State rather than the county is based on the juvenile judge's statutory authority to appoint and remove the director and to direct the bureau. The suggestion is that because the juvenile judge is a state officer, the bureau and its employees are employees of the State. Generally, the role of the juvenile judge as described in the statutes governing juvenile bureaus is not an exercise of the judge's judicial power, but is an administrative role in which the judge is acting on behalf of the county to supervise the juvenile bureaus.[2] In addition to acting in their judicial capacities, judges may exercise administrative, legislative or executive powers. Allen v. Zigler,41 P.3d 1060, 1061 (Okla.Civ.App. 2001).[3] The unique function the juvenile judge performs in supervising, appointing and removing the director is not one which the judge performs in his or her judicial capacity. The statute providing for employees of the juvenile bureau refers repeatedly to the juvenile judge being "subject to the general administrativeauthority of the Presiding Judge of the Judicial Administrative District." 10 O.S.Supp. 2007, § 7305-1.2[10-7305-1.2] (emphasis added). The statutes also refer to the judge being "subject to the generaladministrative authority of the county commissioners" with regard to payment of expenses. Id. § 7305-1.7(B) (emphasis added).
The fact that district court judges are state officers, State ex rel.King v. Rowe, 300 P. 727, 729 (Okla. 1931); Grayson v. Perryman,106 P. 954, 955-56 (Okla. 1909), does not render juvenile bureaus and their employees state employees.[4] The Oklahoma Supreme Court recognized inBell v. Crum, 106 P.2d 518, 523 (Okla. 1940), that district courts exercise both State and county functions. The court noted that many of the functions and much of the work of the district courts have to do with purely county matters.[5] The court recognized in Herndon v.Anderson, 25 P.2d 326, 333 (Okla. *Page 11 
1933), that it was proper to require counties to maintain the superior courts which existed at that time within certain counties. The court stated:
 Unquestionably the court exercises both state and county functions. The creating of such a court blends the interests of the county in this institution, and at the same time it exercises judicial functions which are not exclusively confined to a local purpose but which on the contrary affect the state at large. The judicial function is public and general.
Id.
Thus, we must look at the capacity in which district court judges act to determine whether they are acting on behalf of the State or the county. This concept of analyzing functions performed to determine relationship has been recognized by the Oklahoma Supreme Court. InNorth Side State Bank v. Bd. of County Comm'rs, 894 P.2d 1046 (Okla. 1994), a question arose as to whether the board of county commissioners was liable for acts of the court clerk in paying money on a court fund voucher. The court stated:
 When managing court funds the court clerk does not act as an agent of the board of county commissioners. While among the important functions of the board is that of ensuring fiscal responsibility of all officials who handle county funds, its supervisory responsibility does not extend to money received by the court clerk qua a state court's bursar (or fiscal arm). The management, operation and liability of court funds lie within the peculiar province and control of the legislature.
Id. at 1051 (footnotes omitted). The court noted that the board of county commissioners had no control over and no role to play in the issuance of the critical voucher. The court further stated:
 Moreover, the court clerk's functions qua the court's bursar are not county functions, but rather those of the state. The clerk's office collects court costs, filing and license fees, fines and forfeitures, as well as sums deposited by litigants in condemnation cases, interpleader suits, and matrimonial cases for support and alimony. All this money is deposited in various accounts maintained for the court clerk by the treasurer as an agent of the state.
Id. at 1051-52 (footnotes omitted). The court further noted that the court clerk's function of receiving and disbursing funds of "every
character is inextricably connected, not with county government, but with that official's duty as state court's bursar." Id. at 1052. The court concluded that "the court clerk acts as a functionary of the state district court rather than as a county official." Id. The ultimate conclusion was that the county was not liable for acts of the court clerk in paying money on a court fund voucher. See also School Dist. No. 7. v.Bd. of Comm'rs, 275 P. 292, 295 (Okla. 1928) (holding a county superintendent, though in a sense a county officer, was acting for the State when apportioning funds between the school districts and communities of the county). *Page 12 
Just as the court clerk — a county official — acts on behalf of the State in disbursing funds, the juvenile judge — a state official — acts on behalf of the county in directing and supervising juvenile bureau employees and in appointing and removing the director. The juvenile judge is performing functions as an agent of the county and therefore, the county is generally liable for the judge's actions.
The juvenile judge's supervision of the director of a juvenile bureau and the judge's power to appoint and remove the director are functions the judge performs on behalf of the county. In this capacity, the judge is not performing a judicial function but is acting in his or her administrative role. A review of the statutory scheme shows that the juvenile bureau exists to serve the county. All expenses are paid by the county, services are performed for the county and the juvenile judge acts in an administrative role on behalf of the county. Thus, we conclude that juvenile bureaus and their employees are employees of the county.[6]
 III. DISTRICT ATTORNEYS ARE REQUIRED TO PROVIDE LEGAL REPRESENTATION TO JUVENILE BUREAUS.
You specifically mention in your Opinion request that our resolution of this issue will determine who is to provide legal representation for the juvenile bureau.[7] This past session, the Oklahoma Legislature amended 10 O.S.Supp. 2007, § 7305-1.1[10-7305-1.1] to govern the question of who is to provide legal representation for the juvenile bureau. See 2008 Okla. Sess. Laws ch. 385, § 1(A). The Legislature added a sentence to Section 7305-1.1(A) to read, "For legal representation purposes only, thejuvenile bureau and all facilities operated by the juvenile bureau aredesignated as a department of the county." A provision was also added to Section 7305-1.7 which reads:
 4. Except in instances where it is entitled to representation because of insurance coverage, the district attorney of the county in which the juvenile bureau is located shall represent the juvenile bureau and any employee who was acting in his or her official capacity at the time of the act or omission complained of in any lawsuit. If the district attorney has a conflict of interest or otherwise declines to represent the juvenile bureau or its employees, the county commissioners may request the assistance of the Attorney General or authorize the employment of private counsel for the juvenile bureau and its employees in their official capacity. *Page 13 
2008 Okla. Sess. Laws ch. 385, § 2 (emphasis added). This statute answers your question with regard to who provides legal representation as it requires representation by the district attorney of the county in which the juvenile bureau is located regardless of whether juvenile bureaus and their employees are considered to be State or county entities.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Juvenile bureaus were created in 1968 to serve those counties with populations of eighty thousand (80,000) or more. 10 O.S.Supp. 1968, §§ 1101-1504[ 10-1101-1504] (codified as amended at 10 O.S.Supp. 2007, §§ 7305-1.1-7305-1.10). The predecessor of these juvenile bureaus was the office of County Juvenile Officer, which was created in 1947 to serve individual counties. See 10 O.S.Supp. 1947, §§ 126.1-126.9[ 10-126.1-126.9].
 2. Counties in which the bureaus are located are responsible for all expenses of the juvenile bureau. 2008 Okla. Sess. Laws ch. 385, § 2 (amending 10 O.S. Supp. 2007, § 7305-1.7[10-7305-1.7]).
 3. Juvenile court judges are responsible for supervision of the director of the juvenile bureau and for supervising, appointing and removing the director. The director is responsible for appointing and removing other employees. 10 O.S.Supp. 2007, § 7305-1.2[10-7305-1.2].
 4. Although juvenile court judges are state officers, they are not acting in a judicial capacity when supervising juvenile bureau employees. As juvenile bureaus are created to serve the county, juvenile court judges are generally acting in an administrative capacity on behalf of the county. See 2008 Okla. Sess. Laws ch. 385, § 1 (amending 10 O.S. Supp. 2007, § 7305-1.1[10-7305-1.1]). Thus, as a general rule, juvenile bureaus and their employees are considered to be employees of the county.
 5. The district attorney of the county in which the juvenile bureau is located is statutorily required to represent the juvenile bureau and any employee who is acting in his or her official capacity at the time of the act or omission complained of in any lawsuit. See 2008 Okla. Sess. Laws ch. 385, § 1 (amending 10 O.S.Supp. 2007, §§ 7305-1.1[10-7305-1.1]).
W. A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
SANDRA D. RINEHART SENIOR ASSISTANT ATTORNEY GENERAL
K-28
[1] A separate statute exists which is applicable to those counties that do not maintain a Juvenile Bureau under the provisions of the Oklahoma Juvenile Code. That statute, 10 O.S.Supp. 2007, § 1505[10-1505], establishes procedures for the employment of juvenile officers, or assistant juvenile officers, or contracting of court-appointed special advocates to provide juvenile services. "Any juvenile officer and assistant juvenile officer shall serve at the pleasure of the court. "Id. § 1505(D).
[2] "Judicial power is the power which adjudicates upon and protects the rights and interests of individual citizens, and, to that end, construes and applies the laws." In re Assessment of Kansas City S. Ry.Co., 33 P.2d 772, 775 (Okla. 1934) (citation omitted).
[3] The exercise of such powers does not violate the separation of powers provision in the State Constitution as there can be "blending of the three powers of government" and it is not always possible to contain the three branches of government into "water tight compartments." Baileyv. State Bd. of Pub. Affairs, 153 P.2d 235, 239 (Okla. 1944). See alsoPhelps v. Childers, 89 P.2d 782, 788 (Okla. 1939) (separation of powers doctrine did not prohibit Supreme Court justices from complying with statute requiring them to compile and annotate certain procedural statutes as that was not a function reserved to another branch of government).
[4] We reiterate here that it is only the director of the juvenile bureau who is appointed and subject to removal by the juvenile judge. 10 O.S. 2001 Supp. 2007, §§ 7305-1.2, 7305-1.3(A). Other employees are subject to removal by the director. Id.
[5] District court judges often perform functions which are purely county functions. For instance, district court judges sit on boards which serve the county, such as the board of law library trustees and the governing board of the court fund. 20 O.S. 2001, § 1204[20-1204](a) (stating district judge and associate district judge sit on board of law library trustees); 20 O.S. 2001, § 1302[20-1302] (stating district judge and associate district judge, along with the clerk of the court of the county, make up the governing board of the court fund).
[6] Courts have adopted specific tests for determining employment relationships in particular fact situations such as Title VII of the Civil Rights Act, Eleventh Amendment immunity, state whistleblower statutes, etc. We recognize that courts, upon application of these tests to the specific facts of individual cases, may render decisions contrary to the general conclusion we have made in this Opinion.
[7] Letter from Tim Harris, Tulsa County District Attorney, to W.A. Drew Edmondson, Attorney General of Oklahoma p. 1, n. 1 (May 13, 2008) (on file with author).